**FILED**
**CLERK**

3:04 pm, Dec 09, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
DEMITRIOS STRATAKOS

                Plaintiff,

       -against-

NASSAU COUNTY, POLICE OFFICER
PRASHANT RANE, POLICE OFFICER KARL
PADILLA, POLICE OFFICER "JOHN"
CABEY, DETECTIVE "JOHN" DLUGINSKI,
SERGEANT JAMES BROWN and POLICE
OFFICER JOHN DOES NUMBERS 1–10
unknown and intended to be named later Nassau
County Police Officers involved in the
occurrences herein, individually and in their
respective capacities as members of the Nassau
County Police Department,

                Defendants.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:15-cv-7244 (ADS) (ARL)

**APPEARANCES:**

**Raiser & Kenniff, P.C.**
*Attorneys for the Plaintiff*
300 Old Country Road, Suite 351
Mineola, NY 11501
      By:    Ethan Daniel Irwin, Esq.,
             James M. Ingoglia, Esq., Of Counsel.

**Office of the Nassau County Attorney**
*Attorneys for the Defendant Nassau County*
1 West Street
Mineola, NY 11787
      By:    John Alexander Genua, Assistant County Attorney,
             Diane C. Petillo, Assistant County Attorney.

**Devitt Spellman Barrett, LLP**
*Attorneys for the Defendants*
50 Route 111, Suite 314
Smithtown, NY 11787
      By:    Scott J. Kreppein, Esq., Of Counsel.

1

**Quatela Chimeri, PLLC**
*Attorneys for the Defendants*
888 Veterans Memorial Highway, Suite 530
Hauppauge, NY 11788
      By:    Alexander Sendrowitz, Esq., Of Counsel.

**SPATT, District Judge**:

Plaintiff Demitrios Stratakos (the "Plaintiff") brought a 42 U.S.C. § 1983, state law, and common law action against Nassau County (the "County"), the Nassau County District Attorney's Office, the Nassau County Police Department, and several police officers: Officer Prashant Rane; Officer Karl Padilla; Officer John Cabey; Detective John Dluginski; Sergeant James Brown; and, Officer John Does Numbers 1–10 (collectively, "the Defendants"). He brought the action following an incident outside a nightclub in Carle Place, New York. In November 2016, the Court granted the Defendants' motion to dismiss the complaint as to the Nassau County Police Department and the Nassau County District Attorney's Office.

The Plaintiff then filed an amended complaint against the remaining Defendants, raising the following claims: (1) several § 1983 claims against Rane and Padilla, alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments; (2) a failure to intervene claim against Padilla; (3) a claim for supervisory liability against Dluginski, Brown, and the John Doe Officers; (4) a claim against the County under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); (5) the same § 1983 claims from the first claim, but repurposed as New York State constitutional claims, against all Defendants; (6) a false arrest claim against Rane and Padilla; (7) a false imprisonment claim against Rane and Padilla; (8) an assault and battery claim against Rane; (9) a claim of intentional infliction of emotional distress against Rane; (10) a claim of negligent infliction of emotional distress against Rane and Padilla; (11) a claim for negligence against the individual Defendants;

2

(12) a *respondeat superior* claim against the County; and (13) a claim for malicious prosecution against the individual Defendants.

Presently before the Court are the Plaintiff's Federal Rule of Civil Procedure ("FED. R. CIV. P.") 56 motion for summary judgment, and the Defendants' FED. R. CIV. P. 56 cross-motion for summary judgment. This opinion's background section recounts the events on the night of the incident outside the nightclub; summarizes the criminal proceedings that resulted from that incident; and, describes the procedural history of the present action, along with the pending motions. In the discussion section, this opinion addresses those motions, discussing the parties' allegations as to each claim in turn. For the reasons set forth below, the Court denies the Plaintiff's motion in its entirety, grants the Defendants' cross-motion in part, and denies the cross-motion in part.

## I.   BACKGROUND

Unless otherwise noted, the following facts are undisputed and drawn from the parties' Local Rule 56.1 statements.

On December 29, 2012, at approximately 3:00 am, police arrived at Club Sugar, a nightclub in Carle Place, New York, to investigate the pulling of a fire alarm and an altercation that took place inside the nightclub. ECF 49 at 1. The Plaintiff alleges that he was not involved in the altercation. *Id.* The Defendants claim that employees from Club Sugar believed that the Plaintiff was the aggressor in the altercation. ECF 60-1 at 1.

The following events culminated in the Plaintiff's arrest by Rane and Padilla, though the parties diverge in their description of those events. The Plaintiff alleges the following: (a) he was pacing on the sidewalk near Club Sugar, waiting for his friend to exit the nightclub, when he approached Rane and his squad car to ask him a question; (b) Rane told him to "get the fuck

away from the vehicle," and the Plaintiff complied by returning to the sidewalk; (c) he called 911 to request that a supervisor come to the nightclub, and he started recording his interactions with the police, using his cell phone; (d) Rane called the 911 dispatcher and told the dispatcher that there was no need to send a supervisor to the scene; (e) Rane approached the Plaintiff on the sidewalk and told him that if he did not leave the area, he would arrest him for trespassing; (f) the Plaintiff once again complied with Rane, leaving the area near Club Sugar; (g) while he was walking away from the club on a nearby street, he began calling the 911 dispatcher on his cell phone to ask why a supervisor was not sent, and he saw Rane and Padilla approaching him in their vehicles; (h) Rane struck the Plaintiff's hand that had been holding the cell phone with his baton, then used the baton to strike him in the head, without giving any prior warning, and even though the Plaintiff had made no effort to resist; and, (i) the attack rendered the Plaintiff unconscious; damaged his cell phone to the point that it was not recoverable; caused him to sustain several injuries, such as a laceration to his nose; and required him to go to the hospital. ECF 49 at 2–7.

The Defendants allege the following. The Plaintiff had attempted multiple times to re-enter Club Sugar. ECF 60-1 at 2. For nearly an hour between 3:15 am and 4:15 am, the police ordered the Plaintiff to leave the vicinity of the nightclub, but the Plaintiff did not leave, and instead, he repeatedly dialed 911. *Id.* at 3. They could not confirm that the Plaintiff had recorded them because he had failed to produce the cell phone used that night. *Id.* at 2. The Plaintiff was not walking away in order to comply with directions to leave, he was walking away from officers attempting to arrest him. *Id.* The officers had probable cause to believe that the Plaintiff was obstructing governmental administration under New York Penal Law § 195.05 by "refusing to comply with lawful directives, repeatedly dialing 911, and otherwise interfering with

the police completing their duties at the scene." *Id.* at 2. They also argue that the Plaintiff misrepresents the deposition testimony of several individuals, such as that of Rane, who testified that he was not sure if he had struck the Plaintiff. *Id.* at 3.

The following information is taken from the Plaintiff's amended complaint. After his arrest, the Plaintiff faced charges for assault in the second degree (N.Y. Penal Law § 120,05(3)), resisting arrest (N.Y. Penal Law § 205.30), and obstructing governmental administration ("OGA"). ECF 15 at 6. He pleaded not guilty. *Id.* at 10.

Criminal proceedings lasted for several years, forcing upon the Plaintiff "the loss of wages, the cost of hiring defense counsel, and [] severe psychological stress." *Id.* at 6, 11. He alleged that both Rane and Padilla made false statements to the court during those proceedings. *Id.* at 6, 11. After a jury trial, the Plaintiff was found not guilty on all counts. *Id.* at 6.

The Plaintiff brought this action against the Defendants in December 2015. ECF 1. In November 2016, the Court granted the Defendants' motion to dismiss the Nassau County Police Department and the Nassau County District Attorney's Office from the action. ECF 14. The Court further granted the Plaintiff leave to file an amended complaint. *Id.* In December 2016, the Plaintiff filed the amended complaint, raising the above-noted claims against the remaining Defendants. ECF 15. He asks for declaratory relief, compensatory damages, punitive damages against the individual Defendants, attorney's fees, and costs. *Id.*

Presently before the Court are the parties' FED. R. CIV. P. 56 cross-motions for summary judgment. ECF 57, 60.

## II.   DISCUSSION

The Plaintiff's seeks summary judgment as to all causes of action listed in the first amended complaint. ECF 57-1. In their cross-motion for summary judgment, the Defendants

ask that the Court dismiss all claims against them, with the exception of the Plaintiff's first and eighth claims to the extent that they allege excessive force against Rane, and the Plaintiff's twelfth claim, for relief against the County under the common law theory of *respondeat superior*. ECF 60-3. They also ask that Defendants Cabey, Dluginski, and Brown be dismissed from the case because they did not "have any substantive involvement in the facts and circumstances surrounding Plaintiff's claims." *Id,*

In this section, the Court first provides the legal standard for a summary judgment motion. It then addresses both the Plaintiff's motion and the Defendants' cross-motion simultaneously, examining each cause of action in the amended complaint. The Court briefly describes the allegations raised as to each claim before proceeding to the analysis. The Court slightly departs from the order of the claims as the parties presented them: it first rules on the Plaintiff's federal claims, and then it rules on the Plaintiff's state law and common law claims. For the reasons that follow, the Court denies the Plaintiff's motion in its entirety, grants the Defendants' cross-motion in part, and denies it in part.

### A. The Legal Standard

Rule 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F. 3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence

of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," and the party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal quotation marks omitted).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**B. As to the Plaintiff's § 1983 Claims**

**1. The Parties' Arguments**

The Plaintiff raises ten § 1983 claims, all of them against Rane and Padilla only. ECF 15. He argues that Rane and Padilla deprived him of the following rights, all of which fall under the First, Fourth, Fifth, and Fourteenth Amendments: (a) the freedom to engage in protected speech; (b) the freedom of assembly; (c) the freedom of association; (d) the freedom to petition for redress of grievances; (e) the freedom from unreasonable seizures of one's person, mainly excessive force; (f) the freedom from arrest without probable cause; (g) the freedom from false imprisonment, namely, wrongful detention without good faith, reasonable suspicion, or legal justification; (h) freedom from abuse of process; (i) freedom from deprivation of liberty without

due process of law; and (j) equal protection. ECF 15 at 12–13. In his memorandum in support of his summary judgment motion, he raises arguments only as to (e), the excessive force claim. ECF 57-1 at 6–12.

As to excessive force, he argues that Rane's hitting him in the hand and then in the head with a police baton was objectively unreasonable under the circumstances, because the use of a police baton constitutes the use of deadly force, the Plaintiff was unarmed, and the crime at issue did not merit the use of such force. *Id.* at 8–11. In support, the Plaintiff submits the deposition of Rane, where he admitted that he used deadly force on an individual who was walking away from him, the Plaintiff's own deposition, in which he testifies about his injuries, and the report of Mickey W. McComb, an expert on the use of force. *Id.*

Conversely, the Defendants address all ten of the Plaintiff's § 1983 claims in their cross-motion. As to excessive force, they assert that there are genuine issues of material fact that preclude a grant of summary judgment. ECF 60-3 at 12–14. First, the parties "have drastically different explanations for the facts and circumstances surrounding the injury to Plaintiff's nose that allegedly occurred during the arrest." *Id.* at 13. They argue that while the Plaintiff claimed that Rane inexplicably charged the Plaintiff and hit him; that Rane cannot definitively say if he struck the Plaintiff; and that if he did, it occurred when the Plaintiff was resisting arrest. *Id.* They submit the depositions of Rane, who claimed that the Plaintiff struggled while they were attempting to handcuff him, and Padilla, who said that he didn't see Rane hit the Plaintiff. *Id.* They further argue that an expert's opinion as to excessive force is inadmissible because it opines on a matter of law, and that the Court should draw an adverse inference against the Plaintiff based on his alleged spoliation of both his cell phone and the video recording on it. *Id.*

at 14. They contend that the Plaintiff first attempted to retrieve the data from the phone at an electronics store, and then, after failing to do so, left the phone in a drawer and lost it. *Id.*

In addition, the Defendants argue that the Court should dismiss the Plaintiff's First Amendment Claims because the Plaintiff was drunkenly standing outside a nightclub, and not speaking on a matter of public concern; thus, he was not engaged in protected speech at the time of the incident. *Id.* at 16. They further argue that in so standing, the Plaintiff was neither associating, assembling, nor seeking access to the Courts. *Id.* at 16–17. They argue that the Plaintiff's due process claims should be dismissed because they pertain to his liberty interest, making them duplicative of the Fourth Amendment false arrest claim. *Id.* at 17. They attest as to equal protection that the Plaintiff failed to claim that he had ben treated differently from others who were similarly situated. *Id.* Finally, they claim that Rane and Padilla had probable cause to arrest the Plaintiff for OGA. *Id.* at 9.

In reply, as well as in opposition to the cross-motion, the Plaintiff expands on his constitutional claims, arguing that taping a police officer invokes a First Amendment right of public concern. ECF 70 at 16. However, he does not address his due process or equal protection claims. He further argues that the Defendants have not challenged the substance of his expert's conclusions, and that the Court should not draw an adverse inference about the cell phone's destruction, because it was Rane who damaged the cell phone so badly that the Plaintiff could not obtain the video data from it, despite multiple attempts to do so at electronics stores. *Id.* at 12–13.

The Defendants reply with regard to its cross motion, arguing that there is an issue of fact as to whether Rane hit the Plaintiff with his baton on the Plaintiff's head or the Plaintiff's hand. ECF 78-1 at 5. Thus, they argue, there is a genuine dispute as to whether Rane's use of the baton

constituted physical force or deadly physical force, pursuant to the Nassau County Police Department's use of force policy. *Id.* at 5–6.

### 2. As to the Plaintiff's Excessive Force Claim under § 1983

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him] without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397, 109 S. Ct. 1865. In this regard, although "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, [] it does not give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000) (emphasis in original). Rather, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id.* at 166. However, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Graham*, 490 U.S. at 397, 109 S. Ct. 1865).

Officers may use reasonable force to effect an arrest. *See, e.g.*, *Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 881 (2d Cir. 2012) (Summary Order) (officers' actions were reasonable where "officers turned Kalfus onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling on his upper arms, sweatshirt, and waist."). "Because the Fourth Amendment test of reasonableness is one of objective reasonableness, the inquiry is necessarily case and fact specific and requires balancing

the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citations and internal quotation marks and brackets omitted); *see also Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015). In deciding whether an officer used excessive force, courts consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396, 109 S. Ct. 1865; *Jones*, 465 F.3d at 61); *see also Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003) (internal quotation marks omitted). In judging an officer's actions, a court must not substitute its own viewpoint. Rather, courts "must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Jones*, 465 F. 3d at 61 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).

At the summary judgment stage, because of the "fact-specific nature" of the objective reasonableness inquiry, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F. 3d 113, 123 (2d Cir. 2004). Thus, to prevail on a motion for summary judgment, the evidence must show that

"no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995).

The Court denies the Plaintiff's motion for summary judgment as to the excessive force claim. As the Defendants allege in their opposition, the parties have offered disparate accounts of what transpired once the police began effectuating the arrest, with the Plaintiff claiming that Rane deliberately struck him, despite his not resisting, and the Defendants alleging that the Plaintiff struggled while they attempted to place him in handcuffs, and that it was unclear whether Rane hit the Plaintiff in the hand or in the head, or if the Plaintiff injured his head when he was struggling as the police tried to handcuff him. *See Burch v. City of New York*, No. 11-CV-2841, 2016 WL 11430773, at *8 (E.D.N.Y. Apr. 22, 2016) ("In light of the parties' dramatically diverging accounts of Streeter's encounter with the police, summary judgment is plainly inappropriate with respect to all of Burch's federal claims against the individual officer defendants."); *Ricks v. O'Hanlon*, No. 07-Civ-9849, 2010 WL 245550, at *7 (S.D.N.Y. Jan. 19, 2010) (ruling, that on grounds of qualified immunity, summary judgment was inappropriate where "the parties have offered disparate accounts of what occurred during and after Ricks's arrest") (citing *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999)).

The parties refer to the depositions of the Plaintiff, Rane, and Padilla in support of their motions. As noted above, those depositions provide near opposing descriptions of the Plaintiff's arrest. This raises the issue of which account, or accounts, of the arrest is more reliable, and "[i]t is axiomatic that courts do not normally weigh evidence or assess credibility on summary judgment," as such "'determinations are within the sole province of the jury.'" *Bailey v. City of New York*, 79 F. Supp. 3d 424, 439–40 (E.D.N.Y. 2015) (quoting *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)).

The Plaintiff's other arguments as to excessive force do not justify a grant of summary judgment. For instance, the Plaintiff submits the report of McComb, who opined that Rane employed excessive force. ECF 57-7 at 26. However, the Second Circuit has ruled that an expert's testimony that a police officer's use of force was not "justified under the circumstances" encroached upon the jury's domain. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992); *see also see Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[A]n expert' report is not a talisman against summary judgment."); *Stern v. Shammas*, No. 12-CV-5210, 2015 WL 4530473, at *3 (E.D.N.Y. July 27, 2015).

Though the Court agrees with the Defendants as to denying summary judgment, it declines to impose an adverse inference as to the spoliation of the Plaintiff's cell phone. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107–12 (2d Cir. 2001)).

The Plaintiff argues, and the Court agrees, that the Defendants have not met the second and third elements of this standard. Other than making a conclusory assertion, the Defendants do not explain how the video recording on the cell phone is relevant to a claim that officers later

used excessive force.  *See Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 349 n.18 (E.D.N.Y. 2010) ("First, plaintiff cannot show that the personnel file was relevant to his 'record of' disability theory and, thus, even assuming Verizon violated a duty to preserve plaintiff's personnel file and destroyed the personnel file with culpability, plaintiff cannot meet the requirements for an inference of spoliation.")

The Defendant's argument that the information on the lost video recordings may contradict the Plaintiff's assertion is speculative, at best.  *See Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007) ("[S]peculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence."); *see also Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 570 (S.D.N.Y. 2013).

In addition, at this stage of the litigation, there is a factual dispute as to whether Rane, while effectuating the Plaintiff's arrest, damaged the phone to the point that no data could be retrieved from the phone, despite the Plaintiff's subsequent efforts to obtain that data.  Thus, because the Defendants cannot establish that the Plaintiff destroyed the cell phone, it follows that they also cannot show that he destroyed the phone with a culpable state of mind.  *Cf. Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 289 (S.D.N.Y. 2011) ("There is no evidence that Cedar acted in bad faith in failing to preserve the phenol samples.").

### 3.  As to The Plaintiff's Other § 1983 Claims

As an initial matter, the Plaintiff raises § 1983 claims under the First, Fourth, Fifth, and Fourteenth Amendments, but raises an argument only as to the Fourth Amendment excessive force claim in his summary judgment motion, and he waits until his opposition to the cross-motion to make a First Amendment claim.  The Court acknowledges that in raising a Fourth

Amendment claim under § 1983, the Plaintiff is implicitly raising a Fourteenth Amendment claim as well. *See Marom v. Town of Hempstead*, No. 14-cv-3005, 2017 WL 5495808, at *5 (E.D.N.Y. Mar. 22, 2017) ("The Fourth Amendment is enforceable against the states via the Fourteenth Amendment.") (citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081 (1961)). Still, the Plaintiff makes no arguments as to the Fifth Amendment or equal protection, and thus, on that basis alone, the Court could deny the summary judgment motion as it pertains to those claims.

In any event, the Court denies the motion and cross-motion for summary judgment as to the First Amendment claim as it pertains to the right to film the police. It denies the motion for summary judgment and grants the cross-motion with regard to the remaining First Amendment claims. In addition, the Court awards summary judgment to the Defendants as to the Fifth Amendment and equal protection claims.

### a. The First Amendment

As to the First Amendment, the issues before the Court are whether the Plaintiff's alleged recording of the police while standing outside a nightclub constituted protected speech, and whether that act invoked any other First Amendment Right. The Defendants argue that the complaint that Rane cursed at the Plaintiff does not rise to the level of a constitutional claim; that the record does not support an allegation that Rane struck the Plaintiff in retaliation for the Plaintiff's exercise of his First Amendment rights; and, that the Plaintiff's conduct does not bear upon the freedoms to associate, assemble, or petition for the redress of grievances. ECF 60-3 at 16–17, ECF 78-1 at 9.

The Court agrees with the Defendants that the Plaintiff was not invoking his right to associate, assemble, or petition for the redress of grievances when he filmed the police. As to

whether the Plaintiff had a First Amendment right to record the police, the Court makes the following ruling.

Neither the Supreme Court nor the Second Circuit have explicitly held that there is a right to videotape or record police activity. *Charles v. City of New York*, No. 12-CV-6180, 2017 WL 530460, at *21 (E.D.N.Y. Feb. 8, 2017). However, "every circuit to consider the question has 'concluded that the First Amendment protects the right to record police officers performing their duties in a public space, subject to reasonable time, place and manner restrictions.'" *McKenzie v. City of New York*, No. 17-Civ-4899, 2019 WL 3288267, at *7 (S.D.N.Y. July 22, 2019) (quoting *Higginbotham v. City of New York*, 105 F Supp. 3d 369, 379 (S.D.N.Y. 2015)). "The First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have found that the First Amendment protects the right to record police activity." *Gerskovich v. Iocco*, No. 15-Civ-7280, 2017 WL 3236445, at *8 (S.D.N.Y. July 17, 2017). Those circuits have also ruled that the right contains limits, such as "in particularly dangerous situations, if the recording interferes with police activity, if it is surreptitious, if it is done by the subject of the police activity, or if the police activity is part of an undercover investigation." *Higginbotham*, 105 F. Supp. 3d at 381.

Courts in this circuit have recently ruled as follows with regard to the filming of police. In *Charles*, the Eastern District denied a motion for summary judgment where there was a "genuine issue of material fact as to whether Plaintiff was interfering in police activity" when she recorded a police encounter with a group of teenagers. 2017 WL 530460, at *25. In *McKenzie*, the court ruled that the Plaintiff did not have a clearly established right to begin filming the police after they had told him he was under arrest. 2019 WL 3288267, at *8. In *Leibowitz v. City of New York*, the court held that once a plaintiff defied a police directive to step

back three to five feet from the cite of a vehicle search, his foregoing conduct "[was] not protected by the First Amendment."  No. 14-CV-7106, 2018 WL 1157872, at *10.

Of the cases listed above, this action bears the most resemblance to the facts in *Leibowitz*, with one key distinction. The Plaintiff  testified that he began recording the police after Rane told him to back away from his car.  ECF 60-7 at 15.  However, the parties disagree on the extent to which the Plaintiff complied with that directive.   The Plaintiff says he complied fully, and the Defendants say that the Plaintiff denied repeated requests to leave the scene.  *Id.*; ECF 60-1 at 3. The Defendants' account of the Plaintiff's refusing instructions to disburse is undercut somewhat by Padilla, who testified that the police, after Rane told the Plaintiff to back away, simply waited for the Plaintiff to leave.  ECF 60-10 at 12, 37–42.  The parties also dispute whether, when the Plaintiff ultimately walked away from the nightclub, he did so under his own power, or whether he was evading arrest.  ECF 49 at 4, ECF 60-1 at 3.  Accordingly, summary judgment as to this First Amendment claim is improper for either party.

### b.  The Fifth Amendment and Equal Protection

As to due process, the Defendants argue that any such claim raised by the Plaintiff is duplicative of his false arrest claim.  The court agrees.  *See Levantino v. Skala* 56 F. Supp. 3d 191, 2013 (E.D.N.Y. 2014) ("Plaintiff's procedural due process claim cannot be predicated on the same factual basis as his Fourth Amendment false arrest and false imprisonment claims.") (collecting cases); *see also Jackson ex rel. Jackson v. Suffolk Cty.*, 87 F. Supp. 3d. 386, 399 (E.D.N.Y. 2015) ("Because the Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest, false imprisonment, or malicious prosecution, plaintiffs cannot state a substantive due process claim against defendants based on such conduct.").

The Court further denies the Plaintiff summary judgment and awards the Defendants summary judgment as to the Plaintiff's unspecified equal protection claim. The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). Here, the Plaintiff failed to allege that he was treated differently than others, or that he was a member of a protected group or class. *See Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010).

**C. As to the Individual Supervisory Liability Claim**

The Plaintiff brings a supervisory liability claim against individual Defendants Dluginski, Brown, and several John Doe Officers, on the theory that they failed to supervise Rane and Padilla in the course of their committing unlawful actions, and that they failed to take preventative measures. ECF 15 at 14–15. However, the Plaintiff does not specifically request that the Court grant him summary judgment with respect to this claim. The Defendant moves to dismiss claims as to Dluginski and Brown based on their lack of personal involvement in the events leading to the action. ECF 60-3 at 18. In particular, they allege that Dluginski processed the Plaintiff's arrest paperwork and that Brown was the desk Sergeant who witnessed the arresting officer's signature. *Id.*

The personal involvement of defendants in an action in "'is a prerequisite to an award of damages under [42 U.S.C. § 1983].'" *Washington v. Piper*, No. 18-CV-7783, 2019 WL 6343516, at *3 (S.D.N.Y. Nov. 26, 2019) (emphasis in original) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Thus, a party may not simply allege liability under the doctrine of *respondeat superior*. *Id.* The Defendants have sufficiently alleged a lack of personal involvement on the part of the named individual Defendants, and the Plaintiff does not

describe any personal involvement by the John Doe Defendants. Accordingly, the Court grants the cross-motion for summary judgment as to the claim in its entirety.

### D.  As to the Failure to Intervene Claim

Section 1983 imposes liability not only on officers who use excessive force, but on fellow officers who fail to intervene when excessive force is used by a colleague in their presence. *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); *see Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citing *O'Neill*).  However, "for a law enforcement officer to be held liable for another officer's use of excessive force, 'there must have been a realistic opportunity [for the bystander officer] to intervene to prevent the harm from occurring.'" *Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Where, as here, a party fails to establish at the summary judgment stage that there are no genuine issues of material fact as to excessive force, a court may not award summary judgment on a claim of failure to intervene. *See John v. City of New York*, --- F. Supp. 3d ----, 2017 WL 976934, at *4 (E.D.N.Y. Mar. 13, 2017); *see also Espinoza v. city of New York*, 194 F. Supp. 3d 203, 207 (E.D.N.Y. 2016) ("[B]ecause facts surrounding the alleged assault—including which officer used force and which were duty-bound to intervene—are in dispute, summary judgment on the claim is denied.").  For the above-noted reasons, the Court denies both the Plaintiff's motion for summary judgment and the Defendants' cross-motion for summary judgment as to the failure to intervene claim.

### E.  As to the Plaintiff's *Monell* Claim

#### 1.  Legal Standard

A municipal body, such as a police department or county, may not be held liable under § 1983 for unconstitutional acts of its employees absent allegations that such acts are attributable to a municipal custom, policy, or practice. *Monell*, 436 U.S. at 690–94, 98 S. Ct. 2018; *see also Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (noting that a municipality "cannot properly be held liable . . . unless the injury was inflicted by [its] lawmakers or by those whose edicts or acts may fairly be said to represent official policy."), *cert. denied*, 531 U.S. 813, 121 S. Ct. 47 (2000); *Brown v. Nassau Cty.*, No. 05-CV-872, 2005 WL 1124535, at *3 (E.D.N.Y. May 9, 2005) (Spatt, *J.*).

A Plaintiff my satisfy the "policy or custom" requirement by alleging:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016); *see also Davis v. City of New York*, 959 F. Supp. 2d 324, 338 (S.D.N.Y. 2013) (holding that a policy or custom may be inferred by constitutional violations that are so "persistent and widespread" that they "practically have force of law"); *Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002) ("It can be the result of an informal practice, so long as the discriminatory practices are persistent and widespread so as to constitute a custom or usage with the force of law.") (internal quotation omitted).

However, it is also well established that "a single incident involving an employee below the policymaking level will not suffice to support an inference of municipal custom or policy." *Brewster v. Nassau Cty.*, 349 F. Supp. 2d 540, 549 (E.D.N.Y. 2004) (quoting *Vann v. City of*

*New York*, 72 F.3d 1040, 1050 (2d Cir. 1995)); *see Nicosia v. Town of Hempstead*, No. 16-CV-1176, 2017 WL 3769246, at *3 (E.D.N.Y. Aug. 28, 2017) ("[A]llegedly discriminating against two (2) individuals for refusing to support the Republican Club is insufficient to demonstrate 'persistent and widespread' constitutional violations.").

## 2. Application to The Facts of This Case

The Plaintiff alleges that, based on Rane's behavior, "it is evident that [the] County trains its police offices to act without critically evaluating the facts and circumstances at issue," a form of subpar training that manifests itself when officers use deadly force at inappropriate times. ECF 57-1 at 14. He further contends that Rane and Padilla acted unlawfully with the County and the Nassau County Police Department's "full knowledge, consent and cooperation." *Id.* He alleges that, pursuant to an "unwritten de facto policy," police officers are "encouraged by their supervisors to cover up excessive force by alleging violations of the penal law." *Id.* at 15. Further, they allege that the Defendants have not taken steps to terminate these policies. *Id.* He cites to the amended complaint, which listed several similar *Monell* claims filed against the County. He also attaches to the summary judgment motion a copy of the Nassau County Police Department's use of force policy. ECF 57-8.

The Defendants assert that the Court should dismiss the *Monell* claims because they do not pertain to any official policies. ECF 60-3 at 15. They further claim that a party does not state a meritorious *Monell* claim based on a *de facto* policy, and that an individual street-officer's conduct, standing alone, does not constitute an official policy of the County. *Id.*

In reply, the Plaintiff argues that the underlying basis for his *Monell* claim is that the County inadequately trains its employees; that this inadequate training results in an official County policy; and that the conduct of Rane and Padilla and the expert report by McComb

demonstrate this lack of training. ECF 70 at 14–16. Specifically, the Plaintiff contends that the County failed to properly train officers as to the proper use of the baton. *Id.* at 16. In their reply, the Defendants contend that pursuant to Nassau County Police Department policy, the County "explicitly" trains its officers on the progression of force to use on suspect, which includes the use of physical force and deadly force. ECF 78-1 at 8. They also note that all but one of the lawsuits cited by the Plaintiff were settled and subsequently dismissed with prejudice. *Id.* at 9.

The Court holds that the Plaintiff's *Monell* claim lacks merit, and the Court accordingly grants this portion of the Defendants' cross-motion for summary judgment, and dismisses this cause of action. A party basing a *Monell* claim on inadequate training faces a significant burden:

> The failure to provide proper training may be fairly said to represent a City policy when "the need for more or different training is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberatively indifferent to the need."

*Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 727 (S.D.N.Y. 2006) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). "In addition, the deficiency in training must have actually caused the injury." *Id.* (citing *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197); *Amnesty Am.*, 361 F.3d at 129; *see also Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir 2007) (noting that a plaintiff must identify a "specific deficiency" and establish that that deficiency is "closely related to the ultimate injury").

Here, the Plaintiff has submitted as part of his motion the police department's use of force policy, which gives detailed instructions on when an officer may use physical or deadly force. ECF 57-8. Despite his allegations about an unofficial policy of inadequate training, he fails to show that the County does not train its employees on the use of force. Even if Rane and Padilla departed from their training on the night of the incident, it would be insufficient to form

the basis of a *Monell* claim. *See Jenkins v. City of New York*, 478 F.3d 76, 95 (2d Cir. 2007) ("A training program is not inadequate merely because a few of its graduate deviate from what they were taught."); *see also Fowler v. City of New York*, No. 13-CV-2372, 2019 WL 1368994, at *12 (E.D.N.Y. Mar. 26, 2019).

Further, the Plaintiff's reliance on other lawsuits filed against the County, most of which were dismissed, fails to demonstrate *Monell* liability. *See Prior v. Cty of New York*, No. 16-CV-8232, 2018 WL 4538904, at *4 (S.D.N.Y. Sept. 21, 2018) (dismissing *Monell* claims based on similar prior lawsuits because "[t]hese allegations do not plausibly allege a widespread and persistent practice sufficient to infer a policy or custom"). The cases relied upon by the Plaintiff span a period of two decades and resulted in one verdict in favor of a plaintiff, and no such verdicts since 2001. *See Falls v. Campbell*, No. 17-CV-35, 2019 WL 1255768, at *7 (S.D.N.Y. Mar. 19, 2019) at *7 (collecting cases); *Nunez v. City of New York*, No. 14-CV-4182, 2016 WL 1322448, at *9 (S.D.N.Y. Mar. 31, 2016) (ruling that a "[p]laintiff's identification of approximately two unfavorable decisions per year over a twenty-three-year period fails to support a reasonable inference of a practice . . . 'so consistent and widespread' that it constitutes a 'custom'").

### F.     As to the Plaintiff's False Arrest and False Imprisonment Claims

#### 1.     Legal Standard

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Jenkins*, 478 F.3d at 84; *Hui Ping Wang v. United States*, No. 06-CV-3050, 2007 WL 9710550, at *5 (E.D.N.Y. Dec. 28, 2007).

"'The elements of a claim for false arrest under New York law are that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Youngblood v. City of New York*, No. 15-CV-3541, 2019 WL 6216498, at *5 (S.D.N.Y. Nov. 21, 2019) (quoting *Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496 (S.D.N.Y. Mar. 31, 2019)). A court analyzes a false imprisonment claim in the same way it does a false arrest claim. *Jean v. City of New York*, 512 F. App'x 30, 31 (2d Cir. 2013) (Summary Order); *Alexander v. City of New York*, No. 17-Civ-3170, 2019 W 5887300, at *6 (S.D.N.Y. Nov. 8, 2019).

Probable cause is a "complete defense to a constitutional claim of false arrest." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citations omitted). "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004). A court may decide the probable cause question as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Bishop v. City of New York*, 518 F. App'x 55, 56 (2d Cir. 2013) (Summary Order) (quoting *Weyant*, 101 F.3d at 852); *Jenkins*, 478 F.3d at 88.

An arresting officer may claim qualified immunity from suit on a claim of damages for false arrest even absent probable cause "if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause,

and therefore the officer's qualified immunity, exists if either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotation marks omitted).

### 2. Application to the Facts of This Case

The Plaintiff argues that the police did not have probable cause to arrest him because they did not witness him committing a crime; he had a right to stand on a sidewalk; he complied with their orders to leave; and the charges against him were both fabricated and lacking in merit. ECF 57-1 at 19–20. The Defendants contend that there can be no dispute that an objectively reasonable police officer would have probable cause to arrest Plaintiff for OGA, in that they knew that the Plaintiff was believed to be the aggressor in a fight that they had been called to investigate; the Plaintiff was drunk; and he was causing a disturbance in front of the bar. ECF 60-3 at 10. They also argue that Rane and Padilla were entitled to qualified immunity based on the presence of arguable probable cause. *Id.* at 8. They submit the Plaintiff's 911 call records to show that the Plaintiff was not only intoxicated, but tying up police resources when they were investigating the fight at Club Sugar. *Id.* They also submit a pre-trial hearing from the criminal proceedings in which Rane testified that (a) he spoke with the Plaintiff upon arriving at the scene, and the Plaintiff told him that he had just been in a fight at the nightclub; and (b) management of Club Sugar had told other officers that the Plaintiff was not to be allowed back inside the club. ECF 60-8 at 7–11.

In reply, the Plaintiff reiterates his argument about the absence of probable cause, arguing that he could not "be obstructing governmental administration while standing on a public sidewalk without disrupting anyone around him." ECF 70 at 3. The Plaintiff notes that there is no evidence that he was the aggressor in any fight; the only proof of his intoxication was Rane's

smelling alcohol on his breath; his standing outside the nightclub "[did] not create any level of disturbance"; and, he had complied with Rane's directive to leave the premises. *Id.* at 4–5. He concedes that he made multiple 911 calls, but that he did so in response to Rane's behavior. *Id.* at 6. The Defendants in their reply reiterate their probable cause arguments, and once again allege that even in the absence of probable cause, Rane and Padilla would be entitled to qualified immunity. ECF 78-1 at 2–4.

The Court rules that the police had probable cause to arrest the Plaintiff for OGA. The Court also rules that Rane and Padilla were entitled to qualified immunity because they had arguable probable cause to arrest the Plaintiff. First, as to probable cause. The statute for OGA provides as follows:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

N.Y. Penal Law § 195.05. To satisfy the elements of OGA, "an individual must prevent or attempt to prevent a public official from performing a lawful official function by interfering with that function." *Kass v. City of New York*, 864 F.3d 200, 209 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 487 (2017). Such interference "must be . . . physical," beyond mere yelling. *Basinski v. City of New York*, 706 F. App'x 693, 697 (2d Cir. 2017) (summary order). However, physical interference can include "inappropriate and disruptive conduct at the scene of the performance of an official function even if there is no physical force involved." *Kass*, 864 F.3d at 209–10 (citation and quotation marks omitted).

26

There are several factual disputes about the events leading up to the Plaintiff's arrest. However, the parties agree that at about 3:00 am, the police arrived to investigate an altercation at Club Sugar that included someone pulling the club's fire alarm. ECF 60-7 at 12, ECF 60-6 at 7, ECF 60-10 at 8. The parties also do not dispute that over the next hour, the Plaintiff paced in front of the nightclub, and then paced in the vicinity of the police vehicles, at one point being told to get away, and for much of the time thereafter he repeatedly dialed 911 to request that a supervisor come to the scene. ECF 60-6 at 18, ECF 60-7 at 13–14, ECF 60-8 at 37, 41. The Court further notes that Rane and Padilla have testified that club employees believed the Plaintiff to be the cause of the altercation that prompted their arrival in the first place.

The Court rules that these undisputed facts are sufficient for a ruling on probable cause as a matter of law, *Bishop*, 518 F. App'x at 56, and that based on these facts, the police had probable cause to arrest the Plaintiff for OGA. *See Basinski*, 706 F.App'x at 698 (observing that New York courts have broadly construed the "physical interference" component of OGA to include 'minimal interference set in motion to frustrate police activity.'") (quoting *Matter of Davan L.*, 91 N.Y.2d 88, 91 (1997); *see also Kass*, 864 F.3d at 209 (determining that "inappropriate and disruptive conduct at the scene of the performance of an official action" is sufficient) (internal quotation marks omitted). The Plaintiff's pacing around the nightclub and the police cars, for nearly an hour after the police's arrival, including approaching them once, and the repeated 911 calls as they waited for him to leave, is sufficiently "inappropriate and disruptive." *See Joseph v. Deluna*, No. 15-CV-5602, 2018 WL 1474398, at *4 ("Indeed, courts in this Circuit have explained that merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction for [OGA].") (emphasis in original) (internal quotation marks omitted).

The Court notes that criminal proceedings against the Plaintiff resulting in his being found not guilty have no bearing on whether the police had probable cause to arrest him. *See, e.g.*, *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) ("The validity of an arrest does not depend on an ultimate finding of guilt or innocence.") (citing *Pierson v. Ray*, 386 U.S. 547, 555, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967)); *Obilo v. City University of New York*, No. 01-CV-5118, 2003 WL 1809471, at *10 (E.D.N.Y. Apr. 7, 2003) ("Thus, the fact that plaintiff was ultimately found not guilty has no effect on the fact that there was probable cause to arrest him.").

In addition, the Court rules that the police had arguable probable cause to arrest the Plaintiff, even if the undisputed facts do not show an intent to interfere with police activity. *See Reen v. City of New York*, No. 16-CV-3347, 2018 WL 4608194, at *5 (E.D.N.Y. Sept. 25, 2018) ("An officer will have arguable probable cause to arrest someone for obstructing governmental administration even without evidence of intent."). The police had arguable probable cause here based on their being told that the Plaintiff was the aggressor in the altercation, and the Plaintiff's above-noted conduct. *See Joseph*, 2018 WL 1474398, at *4 ("Because Joseph's conduct was inappropriate and disruptive, it was objectively reasonable for the Individual Defendants to believe there was probable cause to arrest Joseph for OGA.") (internal quotation marks omitted). Accordingly, the Court grants the Defendants' cross-motion for summary judgment as to the false arrest and false imprisonment claims.

## G. As to the Plaintiff's Malicious Prosecution Claim

### 1. Legal Standard

To prevail on a claim of malicious prosecution, a plaintiff must demonstrate that the (1) the defendant initiated prosecution against her, (2) without probable cause to believe that

proceeding could succeed, (3) that the proceeding was begun with malice, and (4) that the matter terminated in the Plaintiff's favor. *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) (citing *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). "'[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

### 2. Application to the Facts of This Case

The Plaintiff brings this malicious prosecution claim against all the individual Defendants. ECF 15 at 22. He asserts that the individual Defendants commenced criminal proceedings against him that they knew to be false. ECF 57-1 at 23. The Plaintiff also alleges that even if the Court were to rule that the officers had probable cause to arrest him, they ultimately lacked probable cause to prosecute him because "it was subsequently established that he did not assault the officers, resist arrest, or obstruct governmental administration," as evidenced by the jury finding him not guilty in his criminal trial. *Id.* The Plaintiff also contends that the Court can infer malice on the part of the Defendants because they prosecuted him without probable cause. *Id.* at 24.

The Defendants in their cross-motion state that they had probable cause to arrest the Plaintiff, and that the Plaintiff failed to allege that probable cause dissipated following his arrest. ECF 60-3 at 12. They also argue that Cabey, Dluginski and Brown lacked personal involvement sufficient to be Defendants, because Cabey only sat in the hospital with the Plaintiff following his arrest, and, as noted above, Dluginski and Brown processed the Plaintiff's arrest paperwork and witnessed his arresting officer's signature. *Id.* at 18.

In his reply, the Plaintiff reiterates his argument that the lack of probable cause to arrest implies the lack of probable cause to prosecute. ECF 70 at 7. He also argues that Defendants Cabey, Dluginski, and Brown had an active role in his prosecution; thus, the Court should not dismiss the malicious prosecution claim as to them. *Id.* at 18–19. The Defendants counter that no intervening fact between the arrest and the initiation of prosecution undermined probable cause. ECF 78-1 at 4–5.

The Court awards summary judgment to the Defendants on the claim of malicious prosecution. The Court has already ruled that the police had probable cause to arrest the Plaintiff. *See Manganiello*, 612 F.3d at 161–62; *see Kravtchouk v. City of New York*, No. 16-CV-4787, 2019 WL 4918083, at *6 (E.D.N.Y. Sept. 30, 2019) ("A final and independent ground requiring dismissal is the existence of probable cause, which is an absolute defense against . . . malicious prosecution claims."). As the Defendants note in their cross-motion, the Plaintiff fails to allege any intervening fact that would have eliminated probable cause; instead, he hinges his argument on the lack of probable cause to arrest him. *See Powell v. Murphy*, 593 F. App'x 25, 28 (2d Cir. 2014) (Summary Order) ("[W]here, as here, probable cause to arrest existed, and Powell concedes that defendants did not learn of any intervening facts between arrest and initiation of prosecution to undermine that probable cause, claims of malicious prosecution cannot survive.") (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)). The Plaintiff's reliance on his ultimate finding of not guilty also fails to suffice, because that finding occurred after the initiation of prosecution. *Id.*

In addition, because the Court is dismissing the malicious prosecution claim in its entirety, it need not rule on whether to separately dismiss the claim as to Defendants Cabey, Dluginski, and Brown.

**H. As to the Plaintiff's New York State Constitutional Claims**

The Plaintiff raises several New York constitutional claims that exactly mirror the arguments raised in his first claim for relief under § 1983.  ECF 15 at 19.  Further establishing the relationship between these two claims, the Plaintiff submitted the same analysis for these state constitutional claims in his summary judgment motion.  ECF 57-1 at 18.  The Defendants assert that the Court should dismiss those claims because there is no private right of action under the New York State Constitution where there is a parallel federal claim.  ECF 60-3 at 15–16 .

The Court awards the Defendants summary judgment as to the Plaintiff's New York constitutional claims.  "[V]arious federal courts in this circuit have held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983."  *G.D.S. v. Northport-East Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 280 (E.D.N.Y. 2012) (collecting cases) (internal quotation marks omitted); *see also Leibowitz*, 2018 WL 1157872, at *21; *Watson v. Richmond Univ. Med. Ctr.*, --- F. Supp. 3d ----, 2017 WL 943928, at *13 (E.D.N.Y. Mar. 8, 2017).

**I. As to the Plaintiff's Claim for Assault and Battery**

**1. Legal Standard**

Courts apply the same Fourth Amendment objective reasonableness standard to New York assault and battery claims as they do to § 1983 excessive force claims.  *Esparanza v. City of New York*, 325 F. Supp. 3d 288, 303 (E.D.N.Y. 2018); *see Kramer v. City of New York*, No. 04-CV-106, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004) ("In the context of state officers performing their lawful duties, New York State law regarding assault and battery parallels the federal laws regarding excessive force.") (citation omitted).  Thus, an officer commits assault and battery if his conduct "was not reasonable within the meaning of the New York statute

concerning justification of law enforcement's use of force in their duties. *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005).

"This analysis looks to a number of factors, including the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 453 (S.D.N.Y. 2018) (internal quotation marks omitted) (citing *Figueroa*, 825 F.3d at 105, and *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)). The key distinction between § 1983 excessive force claims and New York assault and battery claims is that a municipality can be held vicariously liable for assault and battery under a theory of *respondeat superior*. *Graham v. City of New York*, 928 F.Supp.2d 610, 626 (E.D.N.Y. 2003).

### 2. Application to the Facts of This Case

The Plaintiff alleges that the Court should grant him summary judgment as to assault and battery because Officer Rane hit him in the head with his baton without just cause, and with willful and malicious intent. ECF 57-1 at 21. He alleges that Rane testified as such in his deposition, and he further submits McComb's conclusion that Rane's use of force was excessive and unreasonable. *Id.* The Defendant argues that there are genuine issues of material fact with respect to this claim, as there are with the excessive force claim. ECF 60-3 at 13. They allege that those differences are that Rane in his deposition could not definitively say whether he struck the Plaintiff with his baton, but, given the injury to the Plaintiff's nose, he believed it occurred while Plaintiff was struggling as he and Padilla attempted to place him in handcuffs. *Id.*

Another difference is that Padilla testified that he could not remember seeing Rane hit the Plaintiff. *Id.*

For the same reasons listed in this opinion's section on excessive force, the Court denies the Plaintiff's summary judgment motion as to the assault and battery claim. Briefly, the parties offer diverging accounts of the events that transpired during the arrest, and the Court rules that it is within the province of a jury to resolve these disparate accounts. *Bailey*, 79 F. Supp. 3d at 439 –40. In addition, the use of McComb's conclusion is not appropriate at the summary judgment stage of the litigation. *Hygh*, 961 F.2d at 364.

### J. As to the Plaintiff's Intentional Infliction of Emotional Distress Claim

#### 1. Legal Standard

Under New York State law, an intentional infliction of emotional distress ("IIED") claim "requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Howell v. N.Y. Post. Co., Inc.*, *1 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993)). Also under New York Law, an IIED claim "may be invoked only as a last resort" in order "to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal quotation marks omitted) (citing *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) and *Sheila C. v. Povich*, 11 A.D.3d 120, 130 (1st Dep't 2004)).

#### 2. Application to the Facts of This Case

The Plaintiff asserts that Rane exhibited extreme and outrageous conduct when he, *inter alia*, hit him on the head with his baton, used foul and abusive language towards him, and

escalated an otherwise peaceful situation. ECF 57-1 at 21. He also alleges that he has suffered severe emotional injuries from the incident, including memory loss, obsessive behavior, inability to maintain relationships, night terrors, stress, and anxiety. *Id.* The Defendants do not address the Plaintiff's IIED claim in their cross-motion or in their reply, though they do seek in their cross-motion for the dismissal of all claims besides the claims pertaining to excessive force and the common law *respondeat superior* claim. ECF 60.

The Court denies the Plaintiff's summary judgment motion as to IIED, and dismisses the claim. To the extent that the Plaintiff raises this claim based on Rane's physical attack, the claim fails because it "falls well within the ambit of other traditional tort liability." *Salmon*, 802 F.3d at 256; *see Shaheed*, 287 F. Supp. 3d at 455. As to the remaining allegations of IIED, the Court denies the claim because the Court has already ruled that Rane acted with at least arguable probable cause to arrest the Plaintiff. *Shaheed*, 287 F. Supp. 3d at 455. Thus, the Plaintiff has "failed to provide evidence of conduct 'beyond all possible bounds of decency.'" *Id.* (quoting *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 47 (2016)).

### K. As to the Plaintiff's Negligent Infliction of Emotional Distress Claim

#### 1. Legal Standard

The elements of an action for negligent infliction of emotional distress ("NIED") are a "'breach of duty owed to [the] plaintiff which exposes him or her to an unreasonable risk of bodily injury or death.'" *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 314 (E.D.N.Y. 2016) (quoting *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 293 (E.D.N.Y. 2010). Like IIED claims, NIED claims also contain the element of extreme and outrageous conduct and a causal connection between that conduct and severe emotional distress. *Calicchio*, 185 F. Supp. 3d at 314; *see Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014). While

NIED claims usually require emotional distress to stem from a physical injury, "a claim may also lie if a plaintiff suffers purely emotional harm caused by a breach of duty owed directly to the plaintiff which either endangered her physical safety or caused her to fear for that safety." *Franco*, 51 F. Supp. 3d at 247.

To the extent that an NIED claim is "based on conduct encompassed by traditional torts," they are "precluded by New York law, even if the alleged conduct falls short of the traditional tort." *Calicchio*, 185 F. Supp. 3d at 314. In addition, an NIED claim "cannot be asserted if it is essentially duplicative of tort or contract causes of action." *Estate of Knaust v. Contreras*, No. 14-CV-2496, 2017 WL 3638440, at *11 (E.D.N.Y. Aug. 23, 2017) (internal quotation marks omitted).

### 2. Application to the Facts of this Case

The Plaintiff contends that Rane and Padilla owed a duty to him to act in a reasonable and prudent manner; that Rane breached this duty by using excessive force; and that he suffered both emotional and physical injuries from this breach. ECF 57-1 at 22. The Defendants argue that police conduct is not held to a negligence standard. ECF 60-3 at 18. The Court agrees.

"'[A] plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence . . . but must proceed by way of the traditional remedies of false arrest and imprisonment.'" *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (quoting *Secard v. Dep't of Soc. Servs. of Cty. of Nassau*, 204 A.D.2d 425, 612 N.Y.S.2d 167, 168 (2d Dep't 1994) (internal quotation marks and citations omitted) (ellipses in original). The Plaintiff has raised such traditional claims, and even if he had failed to raise such tradition claims, the NIED would fail. *Id.*; *see Hays v. City of New York*, No. 14-CV-10126, 2017 WL 782496, at *5 (S.D.N.Y. Feb. 28, 2017).

**L. As to the Plaintiff's Claim for Negligence**

Similar to the NIED claim, the Plaintiff argues in his negligence claim that both Rane and Padilla breached a duty to act reasonably, and that Rane breached that duty by employing excessive force. ECF 57-1 at 22. The Court dismisses this claim, because under New York law, "when a plaintiff brings excessive force . . . claims which are premised upon a defendants allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Clayton v City of Poughkeepsie*, No. 06-Civ-4881, 2007 WL 2154196, at *6 (S.D.N.Y. June 21, 2007) (citations omitted); *see Edrei v. City of New York*, 254 F. Supp. 3d 565, 583 (S.D.N.Y. 2017); *Busch v. City of New York*, No. 00-CV-5211, 2003 WL 22171896, at *7 (E.D.N.Y. Sept. 11, 2003).

**M. As to the Plaintiff's Respondeat Superior Claim as to the County**

**1. Legal Standard**

"Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior*." *L.B. v. Town of Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002); *see Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 211 n.19 (E.D.N.Y. 2014). A party need not prove a municipal custom or policy to establish a municipality's violation of state law, because "'[m]unicipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago.'" *Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2012) (quoting *Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983)).

**2. Application to the Facts of This Case**

In his *respondeat superior* claim against the County, the Plaintiff alleged that the County was liable for the actions of the individual defendants because they were acting within the scope

of their duties as employees. ECF 15 at 22. The Defendants concede that there are genuine questions of fact as to the Plaintiff's *respondeat superior* claim. ECF 60-3 at 12.

The Court denies the Plaintiff's motion for summary judgment, as it is premature at this stage to determine whether the Plaintiff's surviving tort claim, for assault and battery, will ultimately prevail. Absent this underlying tort liability of a county employee, the Plaintiff may not establish the County's liability under the common law theory of *respondeat superior*.

## III. CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's Rule 56 motion, grants the Defendants' Rule 56 cross-motion in part, and denies it in part. In particular, the Court dismisses the following claims: (1) the First Amendment claims based on the rights to associate, assemble, or petition for the redress of grievances; (2) the Fifth Amendment due process claim; (3) the equal protection claim; (4) the individual supervisory liability claim; (5) the *Monell* claim; (6) the false arrest claim; (7) the false imprisonment claim; (8) the malicious prosecution claim; (9) the New York State constitutional claims; (10) the IIED claim; (11) the NIED claim; and (12) the negligence claim.

The Court rules that the following claims shall proceed: (1) the excessive force claim; (2) the First Amendment claim asserting a right to film the police; (3) the failure to intervene claim; (4) the assault and battery claim; and (5) the *respondeat superior* claim. Finally, the Court notes that all claims seeking relief against Defendants Cabey, Brown and Dluginski have been dismissed.


It is **SO ORDERED.**

_____ /s/ Artur D. Spatt_____ _____          _____December 9, 2019_____

Arthur D. Spatt, U.S.D.J.                              Date